IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER A. SENCHEREY, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 09-2856 |
| STOUT ROAD ASSOCIATES, INC., : | |
| : | |
| Defendant. : | |

**MEMORANDUM OPINION**

Tucker, J.                                                                                              February ___, 2011

Presently before the Court is Defendant, Stout Road Associates, Inc.'s Motion For Summary Judgment (Doc.16 ); Plaintiff, Jennifer A. Sencherey's Response in Opposition thereto (Doc. 18 ) and Defendant's Reply to Plaintiff's Response in Opposition, which the Court will treat as a Motion For Leave to Reply (Doc. 19). Upon careful consideration of the parties submissions and exhibits thereto and for the reasons set forth below the Court will grant the Motions.

**I.**                                                      **BACKGROUND**

This action arises from a charge of employment discrimination filed by Plaintiff Jennifer A. Sencherey ("Plaintiff") against Defendant Stout Road Associates, Inc. t/a Hilton Philadelphia City Avenue ("Defendant") with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on or around April 3, 2008. At issue is whether Defendant is liable for discriminating against Plaintiff on the basis of her sex, race and/or national origin. Also, at issue is whether Plaintiff was wrongfully terminated by Defendant in violation of Pennsylvania common law.

A.      **Plaintiff's Complaint**

Plaintiff, a black female born in Ghana, West Africa, was employed by Defendant as an at-will employee, in the capacity of a night auditor. (Compl. ¶ ¶ 3,7.) Defendant is in the business of operating a hotel known as the Hilton Philadelphia City Avenue. (Compl. ¶ 6.) Plaintiff's employment with Defendant began on August 24, 2006. (Compl. ¶ 7.) In her capacity as a night auditor, Plaintiff was responsible for *inter alia* supervising Defendant's front desk employees, reviewing and auditing all accounting receipts, records and transactions, and processing customer check-ins and check-outs. (Compl. ¶10.) Plaintiff alleges that, while employed at the hotel, she was subjected to a pervasive and regular pattern of harassment and discrimination by Defendant's agents, servants, and/or employees, including the Front Office Manager, Catherine Stafford, and the Human Resources Director, Carla Thomas. (Compl. ¶¶ 13, 19.) Specifically, Plaintiff avers that despite her numerous requests she was denied a performance evaluation. (Compl. ¶¶ 14-15.) Plaintiff believes that Defendant's denial of her requests was purposeful so as to prevent her from receiving a salary increase. (Compl. ¶ 16.)

Sometime in or around November, 2007, Plaintiff went out on maternity leave pursuant to the Family Medical Leave Act ("FMLA").[1] Subsequently, on or around January 22, 2008, approximately one month after giving birth, Plaintiff alleges that she received a phone call at home from Stafford demanding her immediate return to work and threatening termination if she failed to do so. (Compl. ¶ 19.) According to Plaintiff, at that time, she was bleeding profusely from having given birth and was not yet medically released to return to work. (Compl. ¶ 19.) Plaintiff further alleges that Thomas' actions caused Plaintiff to sustain stress blisters. (Compl. ¶ 19.) On or around February 15, 2008, while Plaintiff was still on maternity leave, Stafford notified Plaintiff that her maternity leave was over

---

[1] At Stafford's request, Plaintiff returned to work for two days in the month of December. See Stafford Dep. 56:9-16, May 12, 2010 (testifying that she called Plaintiff "[t]o see if she would be willing to come in and work two shifts over a scheduled week).

and her doctor's notes would not be accepted regardless of her medical condition. (Pl.'s Compl. ¶¶ 20-21.) See also Stafford Dep. 60: 16-18.( testifying that she advised Plaintiff that "[t]he terms of the family leave, the time had expired and she was required to come back to work after that.") During that conversation, Stafford also notified Plaintiff that her employment was terminated. (Pl.'s Compl. ¶ 20.)

Plaintiff further alleges that she was treated differently than Regy, (last name unknown, male) who was employed as Defendant's front desk supervisor and who was permitted to take multiple extensive medical leaves of absence, was frequently absent, but nonetheless, was permitted to return to his position whenever he so desired. (Compl. ¶ 27.) The Complaint goes on to allege that Lindsy, last name unknown, who was employed as Defendant's gift shop clerk, "went on maternity leave approximately the same time as Plaintiff, but was compelled and ordered by Defendant to cut short her maternity leave to approximately six (6) weeks in duration and was not permitted to utilize her entitled full duration of her maternity leave." (Compl. ¶ 30.)

Plaintiff alleges that she was discharged due to her sex, country of origin, and race. (Pl.'s Compl. ¶ 23.) Plaintiff further alleges that Defendant also discharged her in retaliation for reporting Thomas for her refusal to permit Plaintiff to include her newborn child in her insurance benefits. (Pl.'s Compl. ¶ 17.) Plaintiff's claims against Defendant are based on the following theories: (1) the tort of wrongful discharge (Count I); (2) violation of 42 U.S.C. § 1981(a)-(c) (Count II); (3) violation of sections 5(a) and 9 of the Pennsylvania Human Relations Act ,43 Pa. Cons. Stat. § 951 et seq. (Count III); and (4) violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000, et seq. (Count IV).

In support of counts one through four, Plaintiff boldly alleges that "**being born black and born a West African National from the Country of Ghana** and **treated badly** by the Defendant, by and through its agents, servants and/or employees, at all material times hereto, **constitutes both race and ethnic discrimination**. (Compl. ¶¶ 38,53,57,68.) (emphasis added)

In support of Count II, violation of Section 1981, Plaintiff makes the following averments:

Plaintiff's protected class is race, Black and ethnicity a West Africa National from the

Country of Ghana and Plaintiff was subjected to intentional discrimination solely because of her ancestry and/or ethnic characteristics. (Compl. ¶ 42.)

Plaintiff was harassed on a consistent and constant basis, whereby Plaintiff was most frequently harassed by Defendant's agent servant and/or employee, Catherine Stafford (Caucasian), Front Office Manager, but also by Defendant's agent servant and/or employee, Carla Thomas.... either directly or through their condoning the actions of the harassers. (Compl. ¶ 44.)

Examples of harassment include but are not limited to the following:
(a) Plaintiff was required to perform tasks alone which normally have two (2) or more co-employees assigned to them. (eg. When a co-worker went out on maternity leave in May, 2005 the Plaintiff was expected to take over her duties in addition to her own).

(b) Defendant's agents, servants and/or employees ignored the Plaintiff's repeated requests for help while pregnant and then they would criticize Plaintiff.

(c) [Defendant] purposely overworked Plaintiff by failing to hire an adequate number of auditing workers and failing to provide Plaintiff with a chair while pregnant.

(d) [Defendant] refus[ed] [] Plaintiff permission to utilize the bathroom facilities while working and insisted and ordered Plaintiff to lift heavy accounting records, while pregnant. (Compl.¶ 45.)

With respect to Count III of the Complaint, violation of the PHRA, Plaintiff repeats the above allegations and includes that on or about February 15, 2008, Defendant's harassment reached new levels when Plaintiff was called by Stafford and told that her doctor's note legitimizing her absence due to post-partum medical complications would be unilaterally rejected and was further informed that "[y]ou no longer have a job, that it was too late and that's it, based on her pregnancy, race and ethnicity." (Compl. ¶ 61.) Without including any supporting facts, Plaintiff further alleges that the "racial animus necessary for liability [under the PHRA] was based not only on hostility and dislike by Defendant... but also that race and ethnicity were significant factors in Defendant's decisions to demote and ultimately fire Plaintiff." (Compl. ¶ 66.)

In attempt to substantiate the claim in Count IV of the Complaint, violation of Title VII, Plaintiff repeats the above allegations (sub-paragraphs (a)-(d) of paragraph 45) and also alleges that Plaintiff's protected class is race, Black and ethnicity a West Africa National from the Country of

Ghana and Plaintiff was subjected to intentional discrimination solely because of her ancestry and/or ethnic characteristics. (Compl. ¶ 72.) Again, without the inclusion of supporting facts, Plaintiff further alleges that the "racial animus necessary for liability [under Title VII] was based not only on hostility and dislike by Defendant... but also that race and ethnicity were significant factors in Defendant's decisions to unilaterally fire Plaintiff." (Compl. ¶ 80.) Lastly, Plaintiff alleges that she was denied similar benefits, terms, condition and/or privileges of the at will employment contractual relationship as others not within the protected class. (Compl.¶ 81.)

The bulk of the allegations put forth in Plaintiff's Complaint are legal conclusions devoid of any factual basis.

C. **Plaintiff's PHRC Complaint and Amended Complaint**

Following Plaintiff's termination, she dual-filed charges of discrimination with the PHRC and the EEOC. Plaintiff's initial PHRC filing included a sole count of gender discrimination. The PHRC complaint contained no reference to Plaintiff's race or national origin. Plaintiff simply averred that she was discharged by Defendant while she was on maternity leave despite having provided documentation that she was still under medical care. (Pl.'s PHRC Compl. ¶¶13-14.) Further, Plaintiff alleged, that "Regy, (last name unknown, male) was frequently absent and was permitted to return to his position whenever he wanted." (Pl.'s PHRC Compl. ¶ 19.) Subsequently, on September 11, 2008, Plaintiff filed an amended complaint with the PHRC and the EEOC. In addition to the allegations put forth in Plaintiff's original complaint, Plaintiff alleged that "Cindy[2], (last name unknown, female) was [Defendant's] gift shop clerk, was pregnant and...went on maternity leave approximately at the same time as [Plaintiff,] but was compelled and ordered by [Defendant] to cut short her maternity leave to approximately six (6) weeks in duration and was not permitted to utilize her entitled full duration of her maternity leave." (Pl.'s Am. PHRC Compl. ¶ 19.) Not once did Plaintiff allege nor make

---

[2] Plaintiff's PHRC complaint mistakenly refers to Defendant's employee as Cindy, however, her name is Lindsy.

reference to discrimination on the basis of race or national origin. In fact, Plaintiff made no mention of race nor national origin at all. Even when defining her protected class, Plaintiff simply stated "[m]y protected class is sex, female (pregnancy)." (Pl.'s PHRC Compl. ¶ 11.) (Pl.'s Am. PHRC Compl. ¶ 11.) Moreover, Plaintiff did not check the box signifying that she claimed discrimination based upon race or national origin. She placed an x only in the box pertaining to sex discrimination. Moreover, there is no averment in the body of her PHRC Complaint or Amended PHRC Complaint that would raise an inference of race/national origin discrimination.

B.     **Defendant's Response**

Defendant denies Plaintiff's allegations and avers that Plaintiff's discharge was the result of her failure to return to work after her twelve weeks of leave under the FMLA were exhausted. (Def.'s Answer ¶ 17.) Specifically, Defendant avers that Plaintiff's failure to return resulted in her voluntary resignation. See Ex. 8. Def.'s Mem. In Supp. Summ. J. 4. (Def.'s Personnel Action Form noting that the reason for termination was "voluntary resignation, unable to return to work indefinitely."); see also Stafford Dep. 60: 11-18. Stafford notified Plaintiff

> [t]hat she needed to report back to work as far as the date that I was told, and I believe it was February 14th, and that if she had not come back to work at that time that she would be voluntarily - - not abandoning the position, but resigning from the position. The terms of the family leave, the time had expired and she was required to come back to work after that.

According to Defendant, this leave policy is applied on a consistent basis to all employees. (Def.'s Answer ¶ 27.) Defendant denies that Plaintiff's filing with the EEOC and the PHRC was in fact properly a sex discrimination complaint, but instead, a claim of violation of the FMLA. (Def.'s Answer ¶ 31.) Further, Defendant denies that Plaintiff ever filed a race discrimination charge with the PHRC or the EEOC at any time prior to the filing of the instant Complaint. (Def.'s Answer ¶ 31.) Defendant further denies that Plaintiff suffered any injuries, losses, or damages as a result of any unlawful acts of Defendant. (Def.'s Answer ¶ 39.) The PHRC and EEOC made no findings on Plaintiff's charges, but issued right to sue letters, after which Plaintiff filed the instant action.

## II. LEGAL STANDARD

Summary judgment is appropriate where the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327 (1986).

Once the movant has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Under Rule 56(e), the opponent must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-movant. See Matsushita, 475 U.S. at 587; Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-movant shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F. Supp. 2d 576, 579

(D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

**III.**     **DISCUSSION**

**A.    Count I: Tort of Wrongful Discharge**

In Count I of her Complaint, Plaintiff asserts a common law claim for wrongful termination based on discrimination, alleging that "being born black and born a West African National from the Country of Ghana and treated badly by the Defendant, by and through its agents, servants and/or employees, at all material times hereto, constitutes both race and ethnic discrimination." (Compl. ¶ 38.) Defendant contends that the Court should dismiss Plaintiff's wrongful discharge claim as a matter of law because is based upon discrimination, and is thus preempted by statutory remedies under the PHRA. Although, Defendant employed Plaintiff as an at will employee, Pennsylvania law recognizes common law claim for wrongful discharge "where discharges of at-will employees would threaten clear mandates of public policy." Krajsa v. Keypunch, Inc., 424 Pa. Super. 230, 237 (1993) (citations omitted). See also McGovern v. Jack D's, Inc., 2004 U.S. Dist. LEXIS 1985 *5 (E.D. Pa. Feb. 3, 2004) Plaintiff cannot assert a claim for wrongful termination based on race and/or national origin in District Court in the first instance. A plaintiff must first pursue statutory remedies. See Clay v. Advanced Computer Applications, 522 Pa. 86, 559 A.2d 917, 919 (Pa 1989) (dismissing a wrongful termination claim where such claim was actionable under the PHRA).

"[I]n order to assert a claim for wrongful discharge from employment which is cognizable under the Pennsylvania Human Relations Act, an aggrieved party must utilize administrative remedies available through the PHRC before asserting a cause of action in court." Deserne v. Madalyn & Leonard Abramson Ctr. for Jewish Life, Inc., 2010 U.S. Dist. LEXIS 121826 (E.D. Pa. Nov. 17, 2010) (citations omitted). Counsel for Plaintiff should be aware of this requirement as this same issue arose in Deserne, where the Honorable Thomas O'Neill, JR. granted defendant Abramson Center for Jewish Life's motion to dismiss where the plaintiff filed her PHRC Complaint alleging disability

discrimination but later initiated an action in district court alleging discrimination on the basis of race and/or national origin. See Deserne, 2010 U.S. Dist. LEXIS 121826 at *9-10.

Pennsylvania law permits plaintiffs who believe that they have been unlawfully discriminated against or wrongfully terminated because of their race and/ or national origin to bring claims under the PHRA. Plaintiff attempts to circumvent the administrative exhaustion requirements by arguing that she asserted a claim for wrongful termination based on race/ national origin to the PHRC and the EEOC. Under Title VII, and PHRA, "a plaintiff must exhaust all administrative remedies before seeking judicial relief . . . ." Dubose v. District 1199C, 105 F.Supp.2d 403, 410 (E.D. Pa. 2000). The "exhaustion requirement is designed to provide sufficient notice to the defendant concerning the charges and obtain voluntary compliance without resort to litigation." Fucci v. Graduate Hosp., 969 F.Supp. 310, 316 (E.D. Pa. 1997) (citation omitted). That Plaintiff relies on the same facts in making her race and/or national origin discrimination claim as she did in making her gender discrimination claim does not satisfy the exhaustion requirements. Plaintiff fails to meet her burden of pointing to the existence of a genuine issue of material fact in the record. Accordingly, the Court grants Summary Judgment as to Count I of the Complaint.

**B.    Counts III and IV. Violations of PHRA and Title VII**

(i)    Plaintiff's Failure to Properly Plead Race/National Origin Discrimination Before
       Administrative Agencies

Defendant argues that the Court should grant summary judgment with respect to Counts III and IV because Plaintiff has failed to exhaust her administrative remedies. The Court agrees. Under Title VII, it "is established doctrine that a charge must be filed against a party with the EEOC before an action in the district court can be commenced." Glus v. G. C. Murphy Co., 562 F.2d 880, 885 (3d Cir. 1977) (citations omitted). This doctrine is intended "to give notice to the charged party and to provide an avenue for voluntary compliance without resort to litigation." Id. at 888. The scope of the Title VII complaint is limited "by the scope of the EEOC investigation which can reasonably be

expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the commission." Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984) (quotations omitted); see also Webb v. City of Phil., 526 F.3d 256, 263 (3d. Cir. 2009)  Nonetheless, a court may consider additional claims "if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims." Id.  Claims that have a common factual basis with those alleged in the administrative charge may be asserted in federal court because the administrative process has placed the defendant on notice of the factual basis underlying the previously unasserted claims.  See Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996).

Plaintiff's dual charge with the EEOC and PHRC failed to present a race and/or national origin discrimination claim.  In fact, Plaintiff did not check the box signifying that she claimed discrimination based upon race or national origin. She placed an x only in the box pertaining to sex discrimination.  Moreover, there is no averment in the body of her PHRC Complaint or Amended PHRC Complaint that would raise an inference of race and/or national origin discrimination.  "Courts have generally determined that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976).  Here, Plaintiff's charge of discrimination with the PHRC and EEOC is based only on sex, and states that "my protected class is sex, female (pregnancy)." (Pl.'s PHRC Compl. ¶ 11.)  Nowhere in the text of Plaintiff's EEOC charge is there any mention of race or national origin.  Plaintiff did not aver that she was discriminated against as a black female individual nor as a West African female individual.  As such, the EEOC could not reasonably be expected to have investigated Plaintiff's allegations of discrimination on the basis of race and national origin.  Webb, 2007 U.S. Dist. LEXIS 11762 (E.D. Pa. 2007) (finding that plaintiff failed to exhaust her administrative remedies where plaintiff filed an EEOC charge alleging religious discrimination but later brought an action alleging gender

discrimination) Also, there is no nexus between the Title VII claim and the gender discrimination claim alleged in Plaintiff's PHRC complaints that would give Defendant notice to defend the Title VII claim. Thus, it can not be said that the acts alleged in the instant Title VII suit fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Id. (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)).

(ii)     Absence of a Prima Facie Case of Discrimination

Even assuming that Plaintiff properly filed the instant Title VII claims with the EEOC, the facts alleged in Plaintiff's Complaint cannot withstand a motion pursuant to Fed. R. Civ. P 56 (c). Title VII protects employees from discrimination by their employers on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. "The framework for evaluating summary judgment motions under Title VII was established by the Supreme Court in McDonnell Douglas Corp v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." Ade v. KidsPeace Corp., 2010 U.S. App. LEXIS 23558, *11-12 (3d Cir. 2010).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Id. (citing Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-253 (1981) 2010)

Plaintiff has failed to produce any evidence sufficient to establish a prima facie case for race and/or national origin discrimination. To establish a prima facie case of discriminatory discharge, Plaintiff must demonstrate: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination. Texas Dep't of Cmty, 450

U.S. at 253. A Plaintiff must "establish some causal nexus between his [or her] membership in a protected class" and the adverse employment decision. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003). It is undisputed that Plaintiff can establish the first, second and third elements of a prima facie case of unlawful racial discrimination. The parties dispute, however, whether Plaintiff can establish the fourth prong of a prima facie case - that she terminated 'under circumstances that give rise to an inference of unlawful discrimination.'" Waldron v. SL Indus., 56 F.3d 491, 494 (3d Cir. 1995)(quoting Burdine, 450 U.S. at 253). The court finds that Plaintiff fails to satisfy the fourth element, namely that her termination was the result of unlawful discriminatory animus. To establish a prima facie case plaintiff must "present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII". See Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999).

In attempt to establish that employees not in the protected class were treated more favorably Plaintiff avers simply that Regy, an employee of Defendant was frequently absent and out of work on extended medical leaves and was not terminated. Further, Plaintiff avers that Lindsy an employee of Defendant was out on FMLA leave and was permitted to return to work. Plaintiff's attempt to demonstrate that similarly situated individuals not in the protected class were treated more favorably is unavailing as neither of Plaintiff's comparators are similarly situated. Lindsy was not terminated by Defendant but returned to work prior to exhausting her 12 weeks of FMLA leave. See Senchery Dep. 39: 1. In fact, Plaintiff testified in her deposition that Lindsy returned to work prior to the end of her leave "because she needed the money." Id. Ironically, Plaintiff original PHRA complaint actually likened Defendant's treatment of Plaintiff to its treatment of Lindsy in arguing that Defendant engaged in gender discrimination. Moreover, Regy engaged in vastly different conduct than Plaintiff as Regy was not on FMLA. The only similarity between Plaintiff and her two comparators is that both Plaintiff and Lindsy were out on FMLA leave during their respective employment tenures with Plaintiff.

When questioned about what causes her to believe that she was discriminated against on the basis of race, Plaintiff responded that "[a]s far as the workload and me doing almost all of the work in the case of my being pregnant and limping I don't think it is right in the hotel part, that nobody, you know, looked into the situation or did something." Senchery Dep. 65: 8-12. That Plaintiff feels she was treated poorly is insufficient to establish the presence of the discriminatory animus required for liability under the PHRA and Title VII. See Robinson v. Nat'l Med. Care, Inc., 897 F. Supp. 184, 187 (E.D. Pa. 1995) (noting that where plaintiff could not recall specific instances of disparate treatment, his subjective beliefs were insufficient to withstand a motion for summary judgment)). Plaintiff further stated that she felt discriminated against because she did more work than two other employees, both of whom happened to be black males. Senchery Dep. 20: 3-24. Plaintiff averred that she likely would not have been treated poorly if she was American. Senchery Dep. 21: 2-3. Plaintiff's subjective beliefs are insufficient to withstand a motion for summary judgment. See Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) ("To survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue.") (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Plaintiff' allegations are insufficient to establish a prima facie case for race and/or national origin discrimination.

(iii)   Defendant's Legitimate Non-Discriminatory Reason For Termination

Even assuming that Plaintiff established a prima facie case of discrimination, Defendant has satisfied its "relatively light burden" of articulating a legitimate non-discriminatory reason for Plaintiff's termination. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (noting that a defendant "need not prove that the tendered reason actually motivated its behavior" but only that it may have.) Id. In January 2008, while Plaintiff was out on leave she received a telephone call from Thomas who inquired when Plaintiff was expecting to return to work. Senchery Dep. 30: 5-10. Plaintiff concedes that during this conversation she was informed that her FMLA leave would be expiring shortly.

Moreover, Stafford also contacted the Plaintiff in February 2008 and reminded Plaintiff that her FMLA leave would be exhausted as of February 14, 2008 and that she was required to report to work on that date. Stafford Dep. 60: 16-18. Plaintiff failed to return to work and was consequently terminated. Defendant has satisfied its burden of producing evidence of a legitimate non-discriminatory business reason for terminating Plaintiff.

(iv) <u>Absence of Evidence of a Pretext</u>

The Third Circuit has noted that in order to establish a pretext a plaintiff can present evidence, direct or circumstantial, that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of adverse employment action." <u>Atkinson v. Lafayette Coll.</u>, 460 F.3d 447, 454 (3d Cir. 2006) (citations and quotations omitted). In the alternative, a Plaintiff can present evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." <u>Id</u>. In establishing this, a plaintiff can produce evidence demonstrating inter alia "that the employer has treated more favorably similarly situated persons not within the protected class." <u>Ade</u>, 2010 U.S. App LEXIS 23558 *14-15 (citing <u>Simpson v. Kay Jewelers, Div. Of Sterling, Inc.</u>,142 F.3d 639, 645 (3d Cir. 1998). As noted above, Plaintiff has not produced any evidence that a similarly situated person not within the protected class was treated more favorably, i.e., that a similarly situated white person returned to work after the expiration of FMLA leave but was not discharged. Plaintiff may not "avoid summary judgment simply by arguing that the fact finder need not believe the defendant's proffered legitimate explanations." <u>Fuentes,</u> 32 F.3d at 764. Simply put, there are no facts in the record that Plaintiff's termination was based on her race and/or national origin.

Thus, under these circumstances, the Court concludes that Plaintiff fails to satisfy the third step of the McDonnell Douglas framework, as she has failed to provide sufficient evidence from which a factfinder could reasonably believe Defendant's proffered reason for Plaintiff's termination

was a pretext for discrimination. Plaintiff fails to meet her burden of pointing to the existence of a genuine issue of material fact in the record. Accordingly, the Court will grant Defendant's Motion for Summary Judgment with respect to Count IV. The Court also grants Defendant's Motion for Summary Judgment with respect to Count III of Plaintiff's Complaint as PHRA claims alleging race and national origin discrimination are analyzed under the same burden-shifting framework as Title VII claims. See Jones v. School Dist. Of Phila, 198 F.3d 403, 410(3d Cir. 1999); Manning v. Temple Univ., 157 F. App'x 509, 513 (3d Cir. 2005).

**C.     Count II.      Section 1981**

The statute provides that

> (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981

In order to sustain a claim under Section 1981, "a plaintiff must show (1) that he [or she] belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981, including the right to make and enforce contracts." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002) (quoting Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001)). Section 1981 claims are evaluated pursuant to the same burden-shifting framework as Title VII claims. Thus, for the same

reasons stated above the Court will grant Defendant's Motion for Summary Judgment with respect to Count II of Plaintiff's Complaint.

IV. <u>**CONCLUSION**</u>

For the reasons stated above, Defendant's Motion for Summary Judgment will be granted as to all counts.

An appropriate order follows.

**BY THE COURT:**

**/s/ Petrese B. Tucker**

_____

**Hon. Petrese B. Tucker, U.S.D.J.**